## LOONEY v. COUNTY ELECTION BOARD of SEMINOLE COUNTY (GEORGE C. CRUMP, Intervener).

No. 21727. Opinion Filed Sept. 30, 1930.

C. Guy Cutlip, V. R. Biggers, and Irvin L. Wilson, for petitioner.

B. B. Blakeney and A. S. Wells, for intervener.

Respondents appeared in person.

ANDREWS, J. This court, in cause No. 21575, entitled Joseph C. Looney, Petitioner, v. The County Election Board of Seminole County, Respondent, 145 Okla. 25, 291 Pac. 554, promulgated on the 9th day of September, 1930, directed the issuance of a writ of prohibition, as follows:

"It is, therefore, ordered that the county election board of Seminole county, Okla., and each and all of the members thereof, be and they are prohibited from recounting any of the ballots cast at the primary election held in Seminole county on the 29th day of July, 1930, for the office of district judge until such time as it shall be made to appear to that board from evidence that the ballots sought to be recounted 'had been preserved in the manner and by the officers prescribed by the statute, * * * and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with;' that they, and each of them, be and they are prohibited from determining the qualifications of any voter who voted at said election, and that they and each of them be and they are prohibited from determining how any voter voting at said election voted thereat."

A writ was issued commanding the county election board of Seminole county and the members thereof in accordance with that order. Under that order and writ the county election board, before it could lawfully proceed to a recount of the ballots, was required, from the evidence adduced at a hearing, to find three things with reference to the ballots sought to be recounted. Those things were: First, that the ballots had been preserved in the manner prescribed by the statute; second, that the ballots had been preserved by the officers prescribed by the statute; and, third, that the ballots, while in the custody of the officers prescribed by the statute, had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with.

Thereafter, the county election board of Seminole county had a hearing at which evidence was introduced, and at the conclusion of that hearing it made its determination, as follows:

"This board pursuant to an opinion of the Supreme Court No. 21575, has heard the testimony produced by the contestant in the above styled and numbered action. This testimony has been taken in shorthand by a reporter designated by this board. We have also heard the testimony of one witness, Ira J. Banta, called by the contestee.

"Thereupon both contestant and contestee rested their cases, in so far as the evidence was concerned, with the reservation on the part of the contestee that in the event the county election board should decide to open the boxes for the purpose of counting the ballots, the contestee might have the right of objection to any condition in which the boxes might be found.

"We have listened to the testimony of all the witnesses relative to the manner in which these ballots have been preserved and the method in which the boxes have been guarded from the time the votes were cast until the present moment.

"We are, therefore, of the opinion that the ballots challenged in the petition of the contestant have not been disturbed, tampered with or altered since the time they were cast by the voters; and we are of the opinion that the ballots now sought to be recounted are the identical ballots cast at the primary election July 29, 1930.

"We are further of the opinion that the petition of the contestant is sufficient to justify a recount of the ballots save and except precinct known and designated only in the prayer of the petition 'as Wolf' and that no definite error or detailed statement challenging the correctness of the vote in this precinct has been set forth by the contestant in his petition. We are, therefore, of the opinion that no recount should be allowed of the box known as precinct 'Wolfe Three.'

"It is, therefore, the order of the county election board that in conformity of this opinion that all boxes prayed for in the petition, save and except 'Wolfe Three,' be opened for the purpose of recounting the same in this contest."

One of the members of the county election board dissented thereto, as follows:

"First. It is the opinion of the secretary of the county election board that the ballots challenged in the petition filed for the contestant have not been preserved in the manner prescribed by law.

"Second. It is further the opinion of the secretary of the county election board that the ballots in the following named precincts designated as 'Brown Two' and 'Econtuchka One,' 'Four' and 'Five' have been illegally opened and handled by unauthorized persons on the 4th day of August, 1930."

After that determination was made, the county election board of Seminole county proceeded to recount certain ballots cast at the regular primary election held on July 29, 1930, for the Democratic nomination for district judge. The result of that recount, when taken in connection with the posted returns from Hughes county, the other county in the nominating district, showed that George C. Crump received a majority of the votes cast at said election. However, the county election board did not make any change in the tabulation of the votes cast for the office of district judge from that contained in the tabulation of the returns of the precinct officers. It did not certify the votes cast at said primary election for the office of district judge to the State Election Board, and, in its response to the alternative writ issued in this cause, it stated that it would not do so pending the further orders of this court.

Joseph C. Looney thereupon filed his petition in this court praying that a writ of prohibition issue to the county election board of Seminole county, as follows:

"Wherefore, premises considered, your petitioner prays this Honorable Court to issue its writ of prohibition, directed to said respondents, Geo. B. Hall, as chairman, S. W. Norman, as secretary, and Floyd Houston, as member, comprising the county election board of Seminole county, Oklahoma, commanding them and it to desist and refrain from opening said ballot boxes or recounting the ballots contained therein or making any change in the official returns of the several precinct election boards in and for said county and state."

An alternative writ of prohibition was issued to the county election board of Seminole county in accordance with that prayer, and the county election board of Seminole county filed herein its response. It made the transcript of the proceedings and evidence before that board a part of its response and sent up three bound volumes containing that transcript. It stated that it was acting according to the terms of the mandate of this court in its writ of prohibition, as it understood that writ. It prayed this court for orders or directions and stated that it would take no further steps or do no further things in connection therewith except as ordered by this court.

George C. Crump asked and was granted permission to intervene in this cause.

It is apparent from the record that the county election board of Seminole county did not conform to the writ of prohibition issued by this court in cause No. 21575, supra, in that it did not determine from evidence taken at a hearing that the ballots "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with." The finding and determination made by that board did not include a finding and determination that the ballots had been preserved in the manner prescribed by the statute, that the ballots had been preserved by the officers prescribed by the statute or that the ballots, while in the custody of officers prescribed by the statute, had been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with. An analysis of the finding and determination made by the county election board discloses that it found and determined only that the ballots had not been disturbed or tampered with since the time they were cast by the voters, that the ballots had not been altered since the time they were cast by the voters, and that the ballots sought to be recounted were the identical ballots cast at the primary election.

The order of this court has not been complied with, and while this court in this sort of a proceeding would not ordinarily review the record of a hearing had before a county election board on a verified petition for a recount, this court must review this record or have its solemn order defeated by the arbitrary action of an inferior tribunal.

The order made by this court was not an arbitrary order. Under the provisions of section 6151, C. O. S. 1921, the returns of the precinct election board constitute prima facie evidence of the result of the primary election, and the prima facie case thereby made out, under the provisions of chapter 241, Session Laws of 1929, as construed by this court in cause No. 21575, supra, may be overturned only by a recount of the ballots after a proper finding and determination by the county election board.

The Legislature has seen fit to make the returns of the precinct election board prima facie evidence of the result of the election.

Those returns, when properly made, are the returns of four counters under the supervision of three election officials in the presence of watchers appointed either for the political parties or various candidates. This court in the case of Moss v. Hunt, 40 Okla. 20, 135 Pac. 282, in an opinion by Chief Justice Hayes, discussed at length the question of the custody of the ballots. We quote pertinent statements therefrom, as follows:

"* * * We are of the opinion that, on account of the manner in which they were kept, they have lost their character as controlling evidence. * * *

"The manner in which these ballots were handled after they left the hands of the counters affords no secure protection against their being altered by an interested or partisan inspector, although they have never passed from his hands to those of any other person. * * *

"Owing to the manner in which ballots were handled after they were counted by the official counters, it would have been an easy matter, if they were ever placed in an envelope before they were taken from the polling place, for the election inspector to have opened the envelope, taken or removed a portion of the ballots from the unsealed string, substituted other ballots, or, by use of a stencil, to have stamped the cross in the square opposite the name of defendant, upon those ballots where voters voted for neither candidate, and by such means increased the vote of defendant. * * *

"The irregularities of the election officers in precinct 5 relative to the handling of these ballots after they were counted by the official counters in connection with all the circumstances of this case are, in our view, sufficient to discredit their character as the best evidence."

Had the finding and determination required by the writ of this court in cause No. 21575, supra, as a condition precedent to a recount of the ballots, been made by the county election board, this court would review the record of the hearing before the county election board only so far as it was necessary to determine whether or not there was any evidence to sustain that finding and determination. If there was any evidence to sustain the finding and determination, it would be sustained. This court will not review such a record for the purpose of weighing the evidence, but where there is no evidence to sustain the finding and determination of the county election board, its finding and determination is but an arbitrary exercise of judicial power, and this court will exercise its supervisory power to prevent such an arbitrary exercise of judicial power by an inferior tribunal.

In the case at bar there was no finding and determination in conformity with the writ heretofore issued by this court, and the writ herein prayed for could be granted for that reason alone. However, we are not confined to that reason, for the county election board has asked this court for orders or directions and has stated that it will not proceed until it has received orders or directions from this court.

It is contended that the finding and determination made by the county election board is a sufficient compliance with the order of this court in that it found and determined that the ballots had not been disturbed, tampered with, or altered since the time they were cast by the voters and that the ballots sought to be recounted were the identical ballots cast at the primary election. We can readily see how that finding and determination could be made by a county election board when the finding and determination required by this court could not be made. The record in this case establishes the truth of that statement.

After the finding and determination of the county election board, that board proceeded to recount the ballots, including the ballots from Wolfe precinct No. 6.

This record shows, and it was admitted in oral argument before this court, that the Democratic ballots from Wolfe precinct No. 6 were placed in an unsealed envelope, that the envelope was not placed in the ballot box, that those ballots were brought to the courthouse with the ballot box and were never placed in the ballot box until after the county election board had proceeded to count them, that the envelope containing those ballots was placed with the ballot boxes in the district court room, that before the ballots were counted by the county election board, and about 12:00 o'clock one night, the men who were guarding the ballot boxes found this envelope on a table in the courtroom, opened it, took out the ballots, counted them, returned them to the envelope and sealed the envelope. Certainly those ballots had not been preserved in the manner prescribed by the statute, and certainly there was ample opportunity for any one of the many people who visited the courtroom during the weeks that the ballots were kept in that condition to have substituted other ballots or altered those ballots. When that condition was disclosed by the record, George C. Crump said, "I am willing for them to be governed by the original official returns by the precinct officials and not by the recount as made by this board." Under no theory of law of which

we have any knowledge could ballots kept under those conditions be counted in order to change the result shown by the returns of the precinct election officials. Many witnesses might have testified that those ballots had not been disturbed, tampered with or altered since the time they were cast by the voters and that they were the identical ballots cast at the primary election. No one would testify that those ballots had been preserved in the manner prescribed by the statute by the officers prescribed by the statute, or that those ballots had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with.

Persons who engage in the practice of altering ballots, stuffing ballot boxes, and otherwise attempting to defeat the will of an electorate act in secret. They do not make a disclosure of their actions, and it is only in rare instances that a county election board would be able to find from the evidence at a hearing that the ballots had been interfered with.

We think that this is a sufficient showing of the necessity for the requirements contained in the writ in cause No. 21575 that the ballots be preserved in the manner prescribed by the statute and by the officers prescribed by the statute and that while in the custody of the officers prescribed by the statute they have not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with, and that it is not sufficient to show that the ballots had not been disturbed, tampered with, or altered and that they are the identical ballots cast at the election. Should we hold that the finding and determination made by the county election board is sufficient, we would, in so doing, give our approval to a recount of ballots without regard to how they had been preserved, by whom they had been preserved, and how much they had been exposed to the reach of unauthorized persons, and the county election board would thereby be authorized to find and determine that the ballots had not been disturbed, tampered with, or altered and that they were the identical ballots cast at the election, even though none of the statutory provisions for their preservation had been followed and though they had been left in the custody of unauthorized persons exposed to the reach of other unauthorized persons having reasonable opportunity to change or tamper with them. We can give our approval to no such a rule.

The county election board of Seminole county is required to conform to the directions contained in the writ issued by this court in cause No. 21575, supra, before it can lawfully proceed with a recount of the ballots in question. If the evidence offered at the hearing warrants such a finding and determination, it should be made and the recount should be had. If the evidence does not warrant that finding and determination, the recount should be denied.

A writ is ordered to be issued directed to the county election board of Seminole county, Okla., and each of the members thereof, prohibiting them from making any change in the official returns of the several precinct election boards in Seminole county for the office of district judge in the general primary election held on the 29th day of July, 1930, and from recounting the ballots cast at said election until the finding and determination required by this court in its writ of prohibition in cause No. 21575, in this court, has been made.

Let the writ issue.

MASON, C. J., LESTER, V. C. J., and RILEY, HEFNER, CULLISON, and SWINDALL, JJ., and MAXEY, Special Justice, concur. CLARK, J., dissents.